(No. 78-CC-0504—

Harold Kemper, Claimant, v. The State of Illinois, Respondent.

*Opinion filed March 8, 1982.*

Mitchell, Brandon & Schmidt, for Claimant.

Tyrone C. Fahner, Attorney General (William E. Webber, Assistant Attorney General, of counsel), for Respondent.

Roe, C.J.

This claim is brought pursuant to section 8(d) of the Court of Claims Act (Ill. Rev. Stat. 1977, ch. 37, par. 439.8(d)), for negligence. Claimant alleges that at the time of this accident on June 1, 1977, Claimant was an

inmate and incarcerated at the Menard Correctional Center. Claimant had been assigned to the roofing detail and was working by carrying buckets of hot tar from the point at which they were placed on the roof to the point where the hot tar was being used.

During his work, Claimant was caused to trip and fall and he was injured. Claimant charges that Respondent failed to provide Claimant with adequate footwear for the type of work he was doing and failed to provide Claimant with adequate places to walk while carrying hot tar for roofing purposes and he claims violations of the Illinois Structural Work Act.

The evidence revealed that on June 1, 1977, while Claimant was a resident at the Menard Correctional Center, he had been assigned to work on a roofing detail on the kitchen building at Menard. Claimant states that he objected to being assigned to this job for the reason that he had no previous experience. Claimant states he had no choice but to accept the job or receive discipline by being placed in segregation. Claimant states that he requested that he be furnished with rubber-soled boots for working on the roof and was not issued leather gloves or leather apron or any protective clothing, but was issued only a pair of cotton gloves.

Although the evidence was somewhat in dispute as to what Claimant's actual job was and what he was doing at the time he was hurt, it appears that he was responsible for hauling the tar to the roof by means of a rope attached to a bucket and carrying the tar across the roof to the area where it was being applied to the roof's surface by other inmates with mops. Claimant testified that as he was carrying a bucket of tar, he stepped in some wet tar on the roof and lost his balance, thereby falling and sustaining burn injuries to his arm and ankle.

There is no dispute as to the seriousness of Claimant's injuries.

The record is not clear as to the exact nature of the duties that Claimant was performing at the time of his injuries. Claimant testified that he was carrying a five-gallon bucket of hot tar from one edge of the roof to another. William Meyers, another inmate that was working on the roof at the time of Claimant's injury, testified that Claimant was pouring hot tar on the roof and was standing beneath the area where he was pouring the hot tar and the hot tar ran down the roof incline and under his feet, thereby causing him to fall.

We have examined the report of the commissioner who heard the evidence and who observed the demeanor of the Claimant while testifying and we have reviewed the evidence deposition of William Meyers, called on behalf of Claimant to give an evidence deposition. We find that the testimony of Meyers is more credible than that of the Claimant, Harold Kemper.

Claimant Harold Kemper argues, however, that he cannot be charged with contributory negligence under the rule of *Hroma v. Illinois* (1952), 21 Ill. Ct. Cl. 291. In the *Hroma* case, the Claimant had been instructed to assist in the slaughtering of a cow under the immediate direction and supervision of Respondent's agent, who was the dairy manager at the penitentiary where Claimant was incarcerated. Although the evidence was in dispute, it appeared that either the dairy manager, an employee of the State, or Claimant, or another inmate began striking a full-grown cow with a hammer in an effort to kill the cow for the purpose of slaughter. The evidence showed that the method used in killing the cow was improper in that the size of the hammer was not

correct. In the scuffle that ensued in an attempt to subdue the enraged animal, the Claimant's hand was injured. In that case, this Court held that the Claimant could not be guilty of contributory negligence because he did what he was told to do and was thereby injured. We find the *Hroma* case different than the case at bar. In the case at bar, the Claimant was not instructed to pour hot tar "uphill" from where he was standing so that in the normal course of things, the tar would run down the slope of the roof onto the area where Claimant was attempting to stand. The danger in the use of such a technique would be obvious to any reasonable man who was paying attention to what he was doing. Another distinction between this case and the case of *Hroma, supra*, is that the Claimant failed to prove what standards were acceptable and what equipment was proper for use in performing the duties that were being performed by Claimant at the time of the injury. Claimant asks the Court to recognize the need for a different kind of shoes. Although the Court may appropriately apply common sense and experience in adjudicating the issues in these cases, the Court certainly does not qualify as a source of expertise in the proper procedures and equipment needed for hot roofing.

It is the opinion of the Court that the Claimant failed to sustain his burden of proof and, in any event, the record supports the finding that Claimant was contributorily negligent and that under the circumstances in the case at bar, that contributory negligence is a bar to his recovery against the State.

It is therefore ordered that Claimant's claim be, and hereby is, denied.